No. 86-61

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

_____

IN RE THE MATTER OF M.E.M., JR.

_____

APPEAL FROM: District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Joel G. Roth, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Vivian Marie, Montana Legal Services, Great Falls,
Montana
Steven L. Bunch, Montana Legal Services, Helena,
Montana

For Respondent:

John F. Iwen, Great Falls, Montana
Leslie C. Taylor, Dept. SRS, Helena, Montana

Amicus Curiae:

Andrew M. Small for Gros Ventre & Assiniboine,
Billings, Montana

_____

Submitted on Briefs:  June 20, 1986

Decided:  September 16, 1986

Filed:  SEP 16 1986

_____
Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.

Nellie Silk, the aunt of M.E.M., Jr., appeals the decision of the Cascade County District Court denying her motion to intervene in adoption proceedings concerning M.E.M., Jr. and dismissing her petition for adoption.

In her appeal, Silk raises two issues:

1. Does Silk have the right to intervene in the adoption proceedings?

2. May Silk petition for adoption?

We reverse the judgment of the District Court and remand the cause for hearing pursuant to this opinion.

M.E.M., Jr. (hereinafter M.E.M.) is an enrolled member of the Gros Ventre and Assiniboine Tribes of the Fort Belknap Indian Community. He was born in Havre, Montana in March, 1981. His parents were acute alcoholics. Prior to M.E.M.'s birth, Nellie Silk, M.E.M.'s paternal aunt, expressed her interest in caring for the child because she was aware of her brother and sister-in-law's parenting problems. M.E.M.'s father verbally agreed to that arrangement.

However, following M.E.M.'s birth, Hill County Department of Social and Rehabilitative Services (SRS) placed him in foster care immediately upon his release from the hospital. Temporary custody of M.E.M. was awarded to SRS on April 22, 1981.

Upon learning that SRS had taken the child into foster care, Silk wrote to SRS requesting that M.E.M. be placed in her custody. She also contacted Montana Legal Services, who wrote in her behalf to SRS.

SRS responded that because of SRS's efforts to reintegrate the family, placement of M.E.M. with Silk would be inappropriate. Silk is a member of the Standing Rock Sioux Tribe and resides on the Fort Peck Reservation. Visitation between Havre and Fort Peck was considered too difficult. SRS indicated M.E.M. was not being placed for adoption at that time but stated, "We [SRS] are aware of the implications of the Child Welfare Act and she [Silk] of course, as a member of the family would be considered if any adoption does take place."

In May of 1983, M.E.M.'s parents' parental rights were terminated. That termination was subsequently upheld on appeal. In the Matter of M.E.M., Jr. (Mont. 1984), 679 P.2d 1241, 41 St.Rep. 636.

SRS notified the Fort Belknap Tribes of the termination. Silk, however, was not informed by either SRS or the Tribes about the termination proceedings nor was she notified of M.E.M.'s availability for adoption or his preadoptive placement with a non-Indian family. In June of 1984 Silk learned through informal contacts that M.E.M. had been placed for adoption. She went to the Fort Belknap Tribal Judge to inquire. He informed her the child had been placed, but he did not know where. Silk, then through Legal Services, contacted SRS to inquire about M.E.M. SRS did not respond.

Because the termination of parental rights had taken place in Hill County, Silk petitioned the Hill County District Court for adoption and moved to intervene in any previously instituted adoption proceeding. The District Court refused Silk's filings because there was no action concerning M.E.M. pending in that court. SRS continued to withhold information concerning M.E.M. from Silk.

Later, by chance, Silk learned that adoption proceedings had been initiated by the foster family in Cascade County. She then filed a petition for adoption and a motion to intervene in the Cascade County District Court on October 12, 1984. Subsequently, Silk negotiated for an open adoption arrangement. Those negotiation efforts failed and SRS opposed her motions. The District Court denied her motion and petition. It also denied her later motion to amend or alter that judgment.

In support of her motion to intervene, Silk argues that she meets the requirements of Rule 24(a), M.R.Civ.P. which governs the right to intervene. She further argues that in denying her motion the District Court denied her due process of law guaranteed by our Montana Constitution and the federal Constitution. Because we hold Silk does have a statutory right to intervene we need not discuss the constitutional question.

Rule 24(a), M.R.Civ.P. provides:

> Upon timely application anyone shall be permitted to intervene in an action: . . . (2) when the applicant claims an <u>interest</u> relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties. (Emphasis added.)

We find that Silk has just such an interest in the adoption proceedings concerning M.E.M. Her interest stems from the provision of the Indian Child Welfare Act of 1978, 25 U.S.C. § 1901 <u>et</u> <u>seq</u>. (ICWA). The ICWA expresses Congress' intention that Indian children be placed for adoption with Indian families where that is possible. Section 1915(a) of the Act states:

Adoptive placements: preferences. In any adoptive placement of an Indian child under State law, a preference shall be given, in the absence of good cause to the contrary, to a placement with

> (1) a member of the child's extended family;
>
> (2) other members of the Indian child's tribe; or
>
> (3) other Indian families.

As we have previously noted:

> The Act represents Congressional recognition of the concomitant cultural interests of Indian tribes and Indian children; interests fundamental to the perpetuation and preservation of their mutual and valuable heritage. Congress found 'that an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies and that an alarmingly high percentage of such children are placed in non-Indian foster and adoptive homes and institutions . . .' 25 U.S.C.A. § 1904(4). We share that concern.

In the Matter of M.E.M. (1981), 195 Mont. 329, 333, 635 P.2d 1313, 1316 (a different case than the instant case).

We have also noted in the context of proceedings under the ICWA that the State of Montana has a strong and independent commitment to the principles embodied in the ICWA. As we stated in the Matter of M.E.M., supra.

> . . . Our constitution recognizes 'the distinct and unique cultural heritage of the American Indians and is committed in its education goals to the preservation of their cultural integrity'. 1972 Mont. Const., Art. X, § 1(2). Preservation of Indian culture is undoubtedly threatened and thereby thwarted as the size of any tribal community dwindles. In addition to its artifacts, language and history, the members of a tribe are its culture. Absent the next generation, any culture is lost and necessarily relegated, at best, to anthropological examination and categorization. In applying our state law and the Indian Child Welfare Act we are cognizant of our responsibility to promote and protect the unique Indian cultures of our state for all future generations of Montanans. (Emphasis added.)

In light of these federal and Montana statutory and constitutional provisions we turn to Silk's right to

intervene. Silk is an "extended family member" within the meaning of the ICWA § 1915(a). She has an interest created by the preferences listed in that same section. And clearly, the present parties to the adoption do not adequately represent her interest. Therefore Silk meets all of the requirements laid out in Rule 24(a), M.R.Civ.P. for intervention. However, the District Court ruled that Silk's motion was not timely. Given the ignorance in which Silk was kept, we can not see how Silk could have been more diligent or any earlier in her petition or motion.

Therefore, we hold Silk's motion to intervene must be granted.

Further, the paramount consideration in an adoption proceeding is the best interests of the child involved. The absence of SRS consent to the adoption in these circumstances may not be found to bar Silk's claim if, in the court's discretion, this lack of agency consent would not promote the child's best interests.

Because we remand the case to allow Silk to intervene, she may again file her petition for adoption to be considered along with the foster parents' petition in the action. We, of course, do not decide the adoptive placement of the child. However, these competing petitions are to be considered in light of the ICWA preferences which must be followed absent a showing by the foster parents that good cause exists for not following them.

Reversed and remanded.

Justice

- 5 -

We Concur:

_____
Chief Justice

_____

_____

_____
Justices