No. 96-349

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


CLAYTON E. DeVOE,

Plaintiff and Appellant,

v.

STATE OF MONTANA, and the HIGHWAY
COMMISSION OF THE STATE OF MONTANA,

Defendants and Respondents,

and

CITY OF MISSOULA,

Intervenor, Defendant and Respondent.


APPEAL FROM:   District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Ed McLean, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

George C. DeVoe, Attorney at Law, Missoula,
Montana

For Respondents:

James Nugent, Missoula City Attorney,
Missoula, Montana

Peter W. LaPanne, Montana Department of
Transportation, Helena, Montana




Submitted on Briefs: October 17, 1996
Decided: March 10, 1997
Filed:


_____
Clerk

Justice Karla M. Gray delivered the Opinion of the Court.


Clayton E. DeVoe (DeVoe) appeals from the judgment entered by the Fourth Judicial District Court, Missoula County, on its findings of fact, conclusions of law and order dated February 26, 1996, and from earlier orders.  We affirm.

We address the following issues on appeal:

1. Did the District Court err in permitting the City of Missoula to intervene?

2. Did the District Court err in granting partial summary judgment to the State of Montana and City of Missoula, and denying summary judgment to DeVoe, on the basis that the 1937 easement had not been abandoned?

3. Is the District Court's finding that the net acreage is currently used for highway purposes clearly erroneous?


In May of 1890, the Missoula County Commissioners granted a petition declaring that a roadway in the Rattlesnake valley area of Missoula was a public highway (1890 public highway).  The 1890 public highway proceeded north on Rattlesnake Drive and then turned ninety degrees east where it intersected with Creek Crossing Road.

Approximately fifty years later, C. E. Lucas, Ida Lucas, L. A. Wagoner and Valeria Wagoner (collectively, grantors) granted the State of Montana (State) a right-of-way easement (1937 easement) for the construction of a highway on land adjacent to the 1890 public highway in Missoula.  The 1937 easement was formalized by a

document entitled "Highway Right of Way Easement" which set forth a metes and bounds description of the property subject to the 1937 easement and described the property as being located in the NW¬NW¬SE¬ of Section 11, Township 13 North, Range 19 West, Missoula County, Montana. It provided that the 1937 easement:

contain[s] in all 1.23 acres, more or less, including, however, 0.56 of an acre herein described which constitutes a part of an existing public highway. (Gross acreage 1.23; present highway acreage 0.56; net acreage 0.67.)

The 1937 easement further provided that the State was "[t]o have and to hold all of the above described and conveyed property . . . as long as the same is used as a public highway."

The property at issue in this case is the 0.67 of an acre described in the 1937 easement as the net acreage; at the time the 1937 easement was granted, the net acreage was located on the inside of the ninety degree angle on the 1890 public highway. DeVoe is the successor in interest to the grantors of the 1937 easement.

After the State acquired the 1937 easement, it changed the 1890 public highway's ninety degree turn to a long sweeping curve running northeast across the net acreage. In 1983, the State undertook an intersection improvement project which restored the original ninety degree turn on the 1890 public highway. In 1989, the City of Missoula (City) annexed the portion of the Rattlesnake valley which includes the 1890 public highway and the 1937 easement acreage.

DeVoe filed a declaratory judgment action against the State and the Montana Highway Commission (Highway Commission) in 1992. He alleged that the State's 1983 improvement project, which removed the long curve crossing the net acreage, constituted an abandonment of the 1937 easement and, as a result, that the net acreage had reverted to him. In its answer, the State contended that a highway easement is abandoned only by official action of the Highway Commission at a regularly constituted meeting. Because the Highway Commission had taken no official action in this regard, the State maintained that it had not abandoned the 1937 easement.

The City petitioned to intervene in DeVoe's action, pursuant to Rule 24, M.R.Civ.P., claiming a public interest in continued utilization of the 1937 easement. The District Court granted the City's petition over DeVoe's objection. DeVoe requested reconsideration of the court's decision or, in the alternative, partial judgment on the pleadings dismissing the City from the lawsuit. He argued that the City was not a party to the 1937 easement and, therefore, that it did not have standing to assert any rights thereunder. The District Court denied DeVoe's requests. DeVoe subsequently moved for summary judgment, claiming that

the 1937 easement had terminated via abandonment, extinguishment and reversion, or acts incompatible with the nature of the easement. The City and State opposed DeVoeþs motion and filed a joint cross-motion for summary judgment on the basis that affirmative official action indicating an intent to abandon the 1937 easement had not been taken. The District Court granted summary judgment to the City and State on the abandonment issue, and denied DeVoe's motion on the reversion issue.

The City subsequently filed a notice of entry of judgment and DeVoe moved to strike it. He also moved the District Court to reconsider its decision denying his motion for summary judgment on the extinguishment and reversion issues. The District Court granted DeVoe's motion to strike, denied his motion to reconsider and scheduled an evidentiary hearing on all remaining factual issues.

Following the evidentiary hearing, the District Court issued its findings of fact, conclusions of law and order and, thereafter, entered judgment in favor of the City and State. It determined that the 1937 easement had not reverted to DeVoe and that he was not entitled to recover the net acreage or to have title to the net acreage quieted in his favor. DeVoe appeals.

Additional facts are provided below as necessary for our resolution of the issues before us.

1. Did the District Court err in permitting the City to intervene?

DeVoe contends that the District Court erred in permitting the City to intervene in the action pursuant to Rule 24, M.R.Civ.P. The City maintains that it was a proper intervenor in the action and, furthermore, that an order permitting intervention is not an appealable order pursuant to Rule 1(b), M.R.App.P. Thus, we first must determine whether an order allowing intervention is an appealable order.

Rule 1(b), M.R.App.P., authorizes appeals from final judgments and orders and immediate appeals from certain interlocutory orders enumerated therein. Orders permitting intervention are not mentioned in Rule 1(b), M.R.App.P. A matter not specifically denominated in Rule 1(b), M.R.App.P., is not a proper subject of immediate appeal; therefore, an immediate appeal cannot be taken from an order permitting intervention. Continental Ins. Co. v. Bottomly (1988), 233 Mont. 277, 279, 760 P.2d 73, 75.

In the present case, however, DeVoe is not seeking an immediate appeal of the District Court's order allowing the City to intervene. He filed a timely notice of appeal after final judgment had been entered in the case and raised and argued the intervention issue in his opening brief.

Rule 2(a), M.R.App.P., outlines this Court's scope of review in an appeal from a judgment in a civil case. It provides, in

pertinent part, that:

the court may review the verdict or decision, and any intermediate order or decision excepted or objected to within the meaning of Rule 46 of the Montana Rules of Civil Procedure, which involves the merits, or necessarily affects the judgment, except a decision or order from which an appeal might have been taken.

Rule 2(a), M.R.App.P. As discussed above, no direct appeal was available from the District Court's order permitting intervention. Thus, the exception clause in Rule 2(a), M.R.App.P., is not applicable here.

We previously have addressed whether an order allowing intervention can be reviewed pursuant to Rule 2(a), M.R.App.P., in the course of an appeal from a final judgment. In In re Custody of R.R.K. (1993), 260 Mont. 191, 859 P.2d 998, we noted that, while an order denying a motion to intervene is not separately appealable under Rule 1, M.R.App.P., the proper appeal from such an interlocutory order lies after entry of final judgment. Custody of R.R.K., 859 P.2d at 1005 (citing Rule 2(a), M.R.App.P.; Bottomly, 760 P.2d at 75-76; Estate of Schwenke v. Becktold (1992), 252 Mont. 127, 130-31, 827 P.2d 808, 810). We also have observed that the only procedure by which an appellant may challenge the propriety of an intervention order is by appeal after entry of final judgment. Estate of Schwenke, 827 P.2d at 810.

Here, DeVoe appealed from the order allowing the City to intervene in the course of his appeal after entry of final judgment. We conclude, therefore, that DeVoe's appeal from the District Court's order allowing intervention is properly before us.

With regard to whether the District Court erred in permitting the City to intervene as of right, Rule 24(a)(2), M.R.Civ.P., states that intervention shall be allowed, upon timely application:

when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

We recently clarified that a mere claim of interest in the property at issue is insufficient to support intervention as of right under Rule 24(a)(2), M.R.Civ.P. Aniballi v. Aniballi (1992), 255 Mont. 384, 386-87, 842 P.2d 342, 343-44. A district court must determine whether the party seeking intervention has made a prima facie showing of a "'direct, substantial, legally protectable interest in the proceedings.'" Aniballi, 842 P.2d at 344 (citations omitted). A district court's determination regarding whether a party has made

a prima facie showing is a conclusion of law. Sacco v. High Country Independent Press (1995), 271 Mont. 209, 236, 896 P.2d 411, 427 (citations omitted). We review conclusions of law to determine whether the court's interpretation of the law is correct. Rafanelli v. Dale (Mont. 1996), 924 P.2d 242, 245, 53 St.Rep. 746, 748 (citations omitted).

Here, the City premised its motion to intervene as of right on its 1989 annexation of the portion of the Rattlesnake valley in which the 1890 public highway and 1937 easement are located, contending that the annexation gave it an interest in the continued use of the 1937 easement within its territorial borders for highway purposes. The District Court examined and applied a number of statutes, concluding that they authorized the City to control, supervise and maintain the 1890 public highway and 1937 easement property because the City's 1989 annexation brought them within its jurisdiction. On that basis, the court further concluded that the City had a protectable interest in the 1937 easement property which is the subject of this action and granted the City's motion to intervene.

DeVoe advances several arguments in support of his contention that the District Court erred in concluding that the City was entitled to intervene under Rule 24(a), M.R.Civ.P. He does not, however, challenge the court's underlying statutory analysis. A district court's findings and judgment are presumed correct and will not be overturned unless the appellant establishes error. Frank L. Pirtz Const. v. Hardin Town Pump (1984), 214 Mont. 131, 135, 692 P.2d 460, 462. Thus, for purposes of this case, we presume that the District Court correctly concluded that the City is statutorily authorized to control and maintain both the 1890 public highway and the 1937 easement and highway uses thereon, on the basis of its 1989 annexation of the area in which the 1937 easement is located.

DeVoe's primary assertion of error is that the District Court's conclusion that the 1989 annexation gave the City a "protectable interest" in the 1937 easement focuses on the wrong time frame. According to DeVoe, the 1937 easement terminated by abandonment or reversion in 1983; as a result, no easement existed in 1989 in which the City could have acquired any interest--much less the "direct, substantial, legally protectable interest" required by Aniballi--via annexation.

DeVoe's argument is misplaced in the context of the City's motion to intervene as of right. It is premised on an ultimate resolution in DeVoe's favor of the substantive issues raised in the case and, as a general matter and specifically in this case, the resolution of substantive issues on the merits comes later in the proceedings than a motion to intervene in hopes of affecting that resolution. Thus, issues relating to the City's motion to intervene cannot be dependent on whether DeVoe ultimately prevails;

indeed, if a plaintiff were allowed to prevent intervention at the outset of an action, by a person with an adverse interest in the action, by merely asserting that the plaintiff's position would prevail at the end of the action, no intervention as of right under Rule 24(a), M.R.Civ.P., could ever be accomplished. We conclude that the District Court did not focus on the wrong time frame in determining whether the City had a sufficient interest in the property at issue to support a right to intervene under Aniballi.

Nor does Aniballi support DeVoe's contention that the District Court erred in concluding that the City had a legally protectable interest. There, parents sought intervention as a matter of right in a marital dissolution action between their son and daughter-in-law in order to protect an alleged interest in the marital home. The district court determined that the parents' claimed interest was barred by the statute of frauds and, to a large extent, by the statute of limitations. On those bases, the court concluded that the parents did not have "an interest relating to the property or transaction which is the subject of the action." Aniballi, 842 P.2d at 343.

On appeal, we rejected the parents' argument that intervention must be allowed whenever an applicant claims an interest relating to property involved in the lawsuit. Aniballi, 842 P.2d at 343. We held that a prima facie showing of a direct, substantial, legally protectable interest in the proceedings is necessary to support a claim for intervention under Rule 24(a), M.R.Civ.P. Aniballi, 842 P.2d at 344 (citations omitted). In affirming the district court's denial of the parents' motion to intervene, we implicitly concluded that they had not made a sufficient showing of a protectable interest in the proceedings. See Aniballi, 842 P.2d at 344.

Unlike the parents in Aniballi, the City established an interest relating to the property which is the subject of the action before us. It acquired that interest in 1989 when it annexed the area of the Rattlesnake valley in which the 1890 public highway and 1937 easement are located, and became responsible for maintenance of the 1890 public highway and the net acreage. Moreover, in Aniballi, the central property-related issue in the dissolution action was the allocation of rights to the marital property between the spouses, not title in rem or the existence or amount of any debt allegedly owing the parents; thus, the parents' claim was not related to the central issue in the case. Aniballi, 842 P.2d at 343. Here, the City's interest in the 1937 easement is in the nature of a public interest in continued use of land within its jurisdiction for highway purposes. Thus, the City's interest involves the central and dispositive issue in this case; namely, whether the 1937 easement terminated in 1983. We conclude, therefore, that the District Court did not err in determining that the City had established a legally protectable interest in the 1937

easement as required by Rule 24(a)(2), M.R.Civ.P., and Aniballi.

The question remains, however, whether the City's interest is adequately represented by the State. If it is, the City was not entitled to intervene as of right because Rule 24(a), M.R.Civ.P., authorizes such intervention only where the applicant's interest is not "adequately represented by existing parties."

Under the District Court's unchallenged statutory analysis, the City--rather than the State--is responsible as a result of the 1989 annexation for the repair and maintenance of the 1890 public highway and the 1937 easement appurtenant thereto. In addition, the City asserted potential future uses of the 1937 easement for public highway purposes relating to its overall transportation plan for the Rattlesnake valley. Thus, the City's current responsibilities with regard to the 1890 public highway and the 1937 easement, together with its interest in continued use for highway purposes of the subject property within its jurisdiction, render the City's interest in the 1937 easement substantially different from the State's interest as the named holder of the 1937 easement.

DeVoe contends that it was improper for the District Court to consider the future uses the City plans for the easement acreage, but he cites to no authority in support of the contention. While it may be true that potential future uses would be irrelevant in determining the substantive issues discussed below regarding abandonment and reversion, it was not inappropriate for the District Court to consider such potential future uses, reflecting concerns of the City and its citizens, in determining whether the City's interest would be adequately represented by the State. Where, as here, the City and its citizens will experience greater consequences than the State if use of the 1937 easement for highway purposes is lost, we conclude that the District Court did not err in determining that the City's interest in the 1937 easement is not adequately represented by the State.

Finally, we address DeVoe's argument that, once the City was allowed to intervene as a "real party in interest," the District Court should have dismissed the State because the State "had no further business in this litigation." DeVoe's assertions to the contrary notwithstanding, there is nothing illogical about two entities having different protectable interests in the easement property at issue here. Nor does he cite to any authority under which a legal impediment to such a situation exists. Regardless of the City's status as an intervenor, the State is the named holder of the 1937 easement and DeVoe properly brought this action against the State. Moreover, DeVoe did not move to dismiss the State from the action after the City was permitted to intervene and, as a result, he raises this issue for the first time on appeal. We have repeatedly held that we will not address issues raised for the first time on appeal. See Fandrich v. Capital Ford Lincoln Mercury

(1995), 272 Mont. 425, 901 P.2d 112; Carter v. Nye (1994), 266 Mont. 226, 879 P.2d 729.

We hold that the District Court did not err in permitting the City to intervene as of right under Rule 24(a), M.R.Civ.P.

2. Did the District Court err in granting partial summary judgment to the City and State, and denying summary judgment to DeVoe, on the basis that the 1937 easement had not been abandoned?

DeVoe and the City and State filed cross-motions for summary judgment on the issue of whether the State had abandoned the 1937 easement. The District Court determined that the City and State established that no official action to abandon the 1937 easement had been taken and that DeVoe had not established the existence of a genuine issue of material fact to sustain his abandonment theory. Accordingly, it granted partial summary judgment to the City and State on this issue.

Summary judgment is proper when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. We review a district court's grant of summary judgment de novo, applying the same Rule 56(c), M.R.Civ.P., criteria used by that court. Carelli v. Hall (Mont. 1996), 926 P.2d 756, 759, 53 St.Rep. 1116, 1117 (citation omitted). The moving party has the initial burden of establishing the absence of genuine issues of material fact and entitlement to judgment as a matter of law. Carelli, 926 P.2d at 759 (citation omitted). Only when the moving party satisfies its initial burden does the burden shift to the party opposing summary judgment to present evidence raising a genuine issue of material fact. Carelli, 926 P.2d at 759-60 (citation omitted). Material issues of fact are identified by looking to the substantive law governing the proceedings. Carelli, 926 P.2d at 760 (citation omitted).

Here, the parties agree that the substantive law regarding abandonment of easements by governmental entities is set forth in Baertsch v. County of Lewis & Clark (1992), 256 Mont. 114, 845 P.2d 106 and City of Billings v. O. E. Lee Company (1975), 168 Mont. 264, 542 P.2d 97. The pivotal element required to prove that a governmental entity has abandoned public property is a showing of clear intent to abandon. Baertsch, 845 P.2d at 111. The conduct which is claimed to demonstrate the intent to abandon must be some affirmative official act so decisive and conclusive as to indicate a clear intent to abandon. Baertsch, 845 P.2d at 111 (citing Rumph v. Dale Edwards, Inc. (1979), 183 Mont. 359, 600 P.2d 163); City of Billings, 542 P.2d at 99. Abandonment cannot be established by mere implication. Baertsch, 845 P.2d at 111. Moreover, the question of abandonment is generally one of fact, not of law. City of Billings, 542 P.2d at 99 (citation omitted). Thus, we must examine the record as it existed at the time of the parties' cross-

motions for summary judgment on the issue of abandonment of the easement to determine whether a genuine issue of material fact existed which precluded summary judgment in favor of the City and State.

With regard to any formal official action indicating a clear intent to abandon the easement, the City and State presented evidence that DeVoe attempted to have the Highway Commission release the 1937 easement in October of 1991. The Highway Commission responded that it could not take action on his request until it received and reviewed a transportation plan for the Rattlesnake area which was expected to be completed by March of 1992. The Highway Commission did not act on DeVoe's request for release of the 1937 easement prior to his filing of this lawsuit in August of 1992. Thus, there was no evidence of a formal official act by the Highway Commission indicating a clear intent to abandon the 1937 easement.

We have never held, however, that a governmental entity can abandon an easement only by adopting a formal resolution to do so at a regularly scheduled meeting. Indeed, in City of Stockton v. Miles and Sons, Inc. (N.D. Cal. 1958), 165 F.Supp. 554, on which we relied in City of Billings for the principle that intent of a governmental body to abandon must be shown by official act, the federal district court rejected the city's contention that it had not abandoned a water channel because it had not taken formal action to do so via a specific ordinance or resolution. City of Stockton, 165 F.Supp. at 559-60. Having determined that the crucial question was whether the record showed official action by the city or an authorized body or person indicating a clear intention to abandon, the court found many instances of such official action on the record before it. City of Stockton, 165 F.Supp. at 560. Among them were the appropriation of funds for filling the channel, authorization by the city for property owners along the channel--and other private parties--to place fill material in the channel, and the placement by the city of at least seven fills of many thousands of cubic feet of dirt, topped with an asphalt surface of permanent appearance, in the channel. City of Stockton, 165 F.Supp. at 557, 560. The court concluded that the city clearly intended to abandon and, in fact, effectively abandoned the water channel. City of Stockton, 165 F.Supp. at 560. Under our cases, the question is whether the record evidences any affirmative official act by the State which is sufficiently decisive and conclusive to indicate a clear intent to abandon. Baertsch, 845 P.2d at 111; City of Billings, 542 P.2d at 99.

DeVoe's overall position regarding abandonment is that the State's 1983 removal of the roadway surface which curved across the net acreage from 1937 to 1983 was an official and decisive act by the State indicating clear intent to abandon the 1937 easement. In arguing that the District Court erred in granting summary judgment

to the State and City on the abandonment issue, he contends that the deposition testimony of James Williams (Williams) raised a genuine issue of material fact in this regard.

Williams was the State's field project manager in charge of the 1983 project involving the net acreage. He testified that, in that capacity, he supervised the removal of the long curve running northeast across the net acreage and the restoration of the original ninety degree angle on the 1890 public highway. He also opined that, as he understood the 1937 easement language, the property would revert "if use as a public highway ceased." He recalled a 1991 conversation with DeVoe about the 1937 easement and the possibility of reversion in which he "probably told [DeVoe] that there was a chance that [the State] could give it up or it could be given up." Finally, he testified that he had no authority to be involved in a reversion in any way.

There is no dispute that Williams' acts in supervising the removal of the roadway surface from the net acreage and restoration of the original ninety degree angle of the 1890 public highway were actions authorized by the State. There also is no dispute that those actions evidenced the State's clear intent to reroute the driving surface of the 1890 public highway to its original course. The question before us, however, is whether Williams' testimony about those authorized and official actions raised a genuine issue of material fact regarding an intention by the State to abandon and cease to use the 1937 easement as a public highway. We conclude that it does not.

Montana statutes define highways broadly and clarify that a public highway consists of more than the surface of a roadway. Title 60, MCA, entitled "Highways and Transportation," governs matters relating to highways in Montana. Under 60-1-103(18), MCA, a "highway" is statutorily defined to include rights-of-way and other interests in land, as well as highway-related structures and signs. Similarly, a "public" highway includes the entire area within the right-of-way, which is defined as an interest in property acquired for or devoted to highway purposes. Sections 60-1-103(19) and (23), MCA.

Applying these statutory definitions, it is clear that the 1890 public highway includes the net acreage granted to the State for use as a public highway via the 1937 right-of-way easement. It is equally clear that DeVoe's basic premise in this regard, that a "public highway" is limited to the driving surface--or, stated conversely, that "asphalt" is the legal equivalent of "public highway"--is incorrect. As a direct corollary, while Williams' testimony regarding the 1983 removal of the asphalt from the curved route crossing the net acreage constitutes evidence of intent to "abandon" the roadway, it does not constitute evidence of an official act by the State indicating clear intent to abandon the 1937 easement acquired for use "as a public highway."

Nor does any other testimony by Williams relate to, or evidence, intent by the State to abandon the 1937 easement. Williams' opinion that reversion would occur "if use as a public highway ceased" relates, if at all, to the use and reversion issue discussed below. Similarly, Williams' conversation with DeVoe in 1991 related solely to the reversion question; it had no bearing on the question of the State's intent to abandon the 1937 easement at the time of an intersection improvement project undertaken eight years prior to the conversation.

We conclude that the summary judgment record contains no evidence raising a genuine issue of material fact as to clear intent by the State to abandon the 1937 easement in 1983. On that basis, we hold that the District Court did not err in granting partial summary judgment to the City and State, and denying summary judgment to DeVoe, on the basis that the 1937 easement had not been abandoned.

3. Is the District Court's finding that the net acreage is currently used for highway purposes clearly erroneous?

At the outset of our consideration of this issue, we reiterate the well-settled principle in Montana that nonuse is insufficient on a stand-alone basis to establish abandonment of an easement by a governmental entity. Baertsch, 845 P.2d at 111; City of Billings, 542 P.2d at 99. In this regard, we observe that the question of whether, or the extent to which, nonuse alone can effectuate the same result under a reversionary clause contained in a right-of-way easement granted to the State is not before us in this case. The parties have neither raised nor briefed that issue and, as a result, we do not address it here. Nor should our discussion of the issue which is before us be construed as an implicit conclusion that such nonuse would result in reversion of a right-of-way easement held by a governmental entity for public highway use.

DeVoe's complaint in this action asserted that the net acreage granted to the State in the 1937 easement for "as long as the same is used as a public highway," which consisted of 0.67 of an acre, reverted to him by operation of law in 1983 as a result of the State's intersection improvement project and its alleged nonuse of the net acreage thereafter. The City and State disagreed, pointing to continuing uses of the net acreage. Following an evidentiary hearing, the District Court found that a number of highway-related uses continued to exist on the net acreage and, on that basis, concluded that the 1937 easement had not reverted to DeVoe. We note, as did the District Court, that DeVoe changed his position regarding the extent of the reversion at the evidentiary hearing. There, he expressly disclaimed the reversion alleged in his complaint of the entire 0.67 of an acre net acreage described in

the 1937 easement. Instead, he asserted the reversion of only a portion of the net acreage, totaling less than 0.25 of an acre, and attempted to establish that no highway or highway right-of-way uses were occurring on that limited portion of the net acreage. The District Court observed that DeVoe's position at the hearing was not only inconsistent with the basis for relief alleged in his complaint, but that DeVoe had not obtained a survey or presented other evidence from which it could determine precisely which land he was seeking to acquire via reversion based on nonuse.

We agree with the District Court's observations with regard to DeVoe's change of position. In addition, we note that DeVoe cites to no authority under which he could obtain, via reversion, less than the total net acreage described in the 1937 easement. Like the District Court, we will address this issue as it was presented in DeVoe's complaint; namely, whether DeVoe is entitled to reversion based on nonuse for highway purposes of the 0.67 of an acre net acreage referred to in the 1937 easement.

DeVoe contends that the District Court erred in finding that the net acreage currently is used for highway or highway right-of-way purposes. We review a district court's findings of fact to determine whether they are clearly erroneous, looking first at whether the findings are supported by substantial evidence. Rule 52(a), M.R.Civ.P.; Aasheim v. Reum (Mont. 1996), 922 P.2d 1167, 1169, 53 St.Rep. 771, 772 (citation omitted).

Martin Van Mil (Van Mil), a civil engineer with the Montana Department of Transportation (Department), testified that the toe of the fill material for the relocated roadway of the 1890 public highway extends approximately thirty feet into the net acreage; in addition, a concrete curb and gutter, and asphalt for the turning radius at the intersection of Rattlesnake Drive and Creek Crossing Road, extend approximately fifteen feet into the net acreage. According to Van Mil, other current highway-related uses of the net acreage include the placement of traffic control devices, street signs and snow plowed from the highway. John Alan Bergum, a civil engineer for the Department who supervises right-of-way designs and plans, corroborated Van Mil's testimony.

We conclude that the District Court's finding that the net acreage currently is used for highway purposes is supported by substantial evidence and is not otherwise clearly erroneous. On that basis, we conclude that the District Court correctly determined that the 1937 easement had not reverted to DeVoe.

Affirmed.


/S/ KARLA M. GRAY

We concur:

/S/  JAMES C. NELSON
/S/  WILLIAM E. HUNT, SR.
/S/  W. WILLIAM LEAPHART
/S/  TERRY N. TRIEWEILER