177 Wis.2d 424 (1993)
501 N.W.2d 908
IN RE ADOPTION OF J.C.G.:
L.P., Sr. and L.P., Appellants,
v.
B.G. and K.G., Respondents.
IN RE the ADOPTION OF J.A.G.:
L.P., Sr. and L.P., Appellants,
v.
B.G. and K.G., Respondents.
Nos. 92-0010, 92-0011.
Court of Appeals of Wisconsin.
Submitted on briefs July 14, 1992.
Decided May 27, 1993.
*425 For the appellants the cause was submitted on the brief of Kenneth M. Wagner of Dade & Wagner of Whitewater.
*426 For the respondents the cause was submitted on the brief of Judith Sperling Newton of Stafford, Rosenbaum, Rieser and Hansen of Madison.
For J.C.G. and J.A.G. the cause was submitted on the brief of E. Scott Scheibel of Scheibel Law Office of Fort Atkinson.
Before Eich, C.J., Gartzke, P.J., and Sundby, J.
GARTZKE, P.J.
The paternal grandparents have appealed from an order granting adoption of their two grandchildren to persons other than themselves. The issue is whether the appellants have standing to object to the adoption and to present evidence at the hearing on the adoption petition. The trial court held they do not, and we agree. We affirm.
The children were born in 1980 and 1981. In 1982, their father left them at the home of his parents, the appellants. In July 1990, the family court terminated the parental rights of the childrens' father and mother, transferred legal guardianship and custody of the children to the Wisconsin Department of Health and Social Services under sec. 48.427(3)(a)4., Stats., and ordered their physical placement to continue with appellants until an adoptive placement could be arranged. The children lived with appellants until October 1990 when they were placed in their adoptive home.
The adoptive parents filed their petition in October 1991. Before the petition was filed, appellants filed an "objection" to the petition. The order setting the petition for hearing required notice to the Wisconsin Department of Health and Social Services but did not refer to appellants. They nevertheless appeared at the hearing to testify against the adoption. The court ruled, however, that they lacked standing to object to *427 the adoption and would not let them testify. The court took testimony in support of the petition, found that it is in the best interest of the children that the adoption be granted, and entered the order before us on appeal.
[1-3]
Standing, the right to be heard by a court, is not construed narrowly or restrictively. Bence v. City of Milwaukee, 107 Wis. 2d 469, 478, 320 N.W.2d 199, 203 (1982). It is required as a matter of judicial policy, not as a jurisdictional prerequisite. Wisconsin Bankers Ass'n v. Mutual Say. & Loan Ass'n, 96 Wis. 2d 438, 444 N.1, 291 N.W.2d 869, 873 n.1 (1980). However, a strong desire to be heard by the court is not enough to establish standing. To have standing, a person must show that the proceedings will have a direct effect upon his or her legally protected interest. Trojan v. Board of Regents, 104 Wis. 2d 277, 286, 311 N.W.2d 586, 590 (1981). Whether the person claiming standing has such an interest is a question of law. Le Fevre v. Schrieber, 167 Wis. 2d 733, 736, 482 N.W.2d 904, 905 (1992).
The adoptive parents rely on secs. 48.88 and 48.91, Stats., to support the trial court's ruling that the appellants lack the legally protected interest required for standing. We find no conclusive guidance in either statute. Section 48.88(1m), Stats., provides that notice of the adoption hearing shall be mailed to the guardian of the child, the agency making the investigation, and the child if the child is 12 years of age or older, but is silent as to whether other persons may appear at the hearing. Section 48.91(1), Stats., provides that the hearing may be in chambers "unless an interested person objects," but does not specify who are interested persons. Section 48.91(3), Stats., provides that after the hearing and the study required by the statute, the court shall grant the adoption if satisfied that it is in the "best *428 interests of the child," but does not specify who may appear and present evidence on that issue.
We believe the standing issue turns on the right to petition for adoption.[1]"Standing in custody cases has generally referred to whether an individual has status to bring an action for custody under the applicable statute." In re Z.J.H., 162 Wis. 2d 1002, 1008 n.3, 471 N.W.2d 202, 204-05 n.3 (1991). The same principle should apply to adoptions.
[4]
Thus, persons having the right to petition for adoption are deemed to have a legally protectible interest in the adoption and therefore have standing to object to another person's petition to adopt. Conversely, the person who has no right to petition lacks that interest and therefore lacks standing to object.
Appellants come within the latter classification. They have not shown they qualify as adoptive petitioners under sec. 48.90(1) and (2), Stats. They lack standing to object to the petition before the trial court.
The appellants could have petitioned under sec. 48.835, Stats., if either parent had placed the children for adoption in appellants' home before the parents' *429 rights had been terminated.[2] The question is whether sec. 48.835 automatically confers standing on them, even though nothing in this record shows that either parent had placed the children with appellants for adoption.
We are satisfied that sec. 48.835, Stats., does not confer standing on appellants. Whether a person has standing turns on the legal interest of the person who claims standing. The interest must exist on the date the person claims standing. Whether appellants could have petitioned at some earlier date is not the question. Because appellants could not have filed a petition to adopt on the date the court heard the petition before it, appellants lack that interest and therefore standing.
[5]
We conclude that the trial court properly ruled that appellants could not object and present evidence. The order for adoption must be affirmed.
*430 By the Court. Order affirmed.
SUNDBY, J. (concurring).
Once again the law makes loving grandparents "nonpersons." See In re Soergel, 154 Wis. 2d 564, 575, 453 N.W.2d 624, 628 (1990) (Ceci, J., concurring). However, this case is even more tragic than Soergel. Here, the only "parents" the children have known since infancy are their paternal grandparents. The parental rights of the children's parents have been terminated and the children have been placed in the home of proposed adoptive parents. The grandparents claim that the county department of social services promised them that they would always be allowed visitation with their grandchildren, even following termination of their son's parental rights. Undoubtedly, that informal promise was made prior to the decision in Soergel.
In Soergel, the paternal grandparents filed a petition for visitation with their grandchild, after their son's parental rights had been terminated and the child had been adopted by a stepfather. The court concluded that adoption had the effect of severing all rights of the adopted child's birth family to the child. Therefore, the court denied the grandparent's motion to be allowed visitation under sec. 767.245(4), Stats.
The grandparents herein objected to the petition to adopt their son's children. Their affidavit in support of their objection indicated that they were asking the court to review the department's removal of the children from their foster care and also to review their rights to visit the children. The trial court ruled that the grandparents should have objected when their son's parental rights were involuntarily terminated. *431 The court said that they were now estopped from asserting any rights they might have had.
I disagree with the trial court's conclusion that the grandparents are estopped from objecting to the proposed adoption because they had failed to object to the termination of their son's parental rights. At that time, they could not have been expected to know the implications of the Soergel decision. In addition, they allegedly had the department of social services' promise, undoubtedly made in good faith, that they would always have visitation rights with the children.
I do agree, however, that the grandparents had no standing to object to the proposed adoption. I write separately to urge the legislature to study the problem of protecting significant relationships with children, regardless of how those relationships are first initiated.
The legislature partially overruled Soergel in 1991 Wis. Act 191. The act amended sec. 48.92(2), Stats., to add: "Notwithstanding the extinction of all parental rights under this subsection, a court may order reasonable visitation under s. 48.925." Section 48.925, Stats., created visitation rights in certain persons. A relative who has maintained a relationship similar to a parent child relationship may be granted reasonable visitation if the child has been adopted by a stepparent or relative. That authority does not help the grandparents in this case because the children were not adopted by a stepparent or relative. The statute has the further limitation that visitation may be granted only to a relative who has maintained a relationship similar to a parent child relationship. A person not a relative who had maintained such a relationship would not have standing to petition for visitation.
*432 I urge the legislature to make a comprehensive study of the question of visitation. I see no reason why trial courts cannot be granted the discretion in any situation in which a relationship similar to a parentchild relationship is being terminated, for whatever reason, to grant visitation to the person who has maintained that relationship, regardless of the degree of kinship or whether such a person is kin to the child. The important question is what is in the best interest of the child. Trial courts must make best-interest decisions for children in many different contexts. I see no reason why they should not be competent to make such a decision whenever a relationship similar to the parent-child relationship is being disturbed or terminated.
I would prefer to dissent from the proposition that grandparents situated like the grandparents in this case have no standing to request visitation with their now grandchildren. However the law, such as it is, binds me. Perhaps Mr. Bumble was right.
NOTES
[1] Section 48.90, Stats., provides in relevant part:

(1) A petition for adoption may be filed at any time if:
(a) One of the petitioners is a relative of the child by blood, excluding parents whose parental rights have been terminated and persons whose relationship to the child is derived through such parents.
(b) The petitioner is the child's stepparent.
(c) The petition is accompanied by a written approval of the guardian.
(d) The petitioner is the proposed adoptive parent with whom the child has been placed under s. 48.839.
(2) Except as provided under sub. (1), no petition for adoption may be filed unless the child has been in the home of the petitioners for 6 months or more.
[2] Section 48.835, Stats., provides:

(1) In this section and s. 48.837, "custody" means physical custody of a child by the child's parent not in violation of a custody order issued by a court. "Custody" does not include physical custody of a child during a period of physical placement with a parent who does not have legal custody of the child.
(2) A parent having custody of a child may place the child for adoption in the home of a relative without a court order.
(3)(a) If the child's parent has not filed a petition for the termination of parental rights under s. 48.42, the relative with whom the child is placed shall file a petition for the termination of the parents' rights at the same time the petition for adoption is filed, except as provided under par. (b).
(b) If the person filing the adoption petition is a stepparent with whom the child and the child's parent reside, the stepparent shall file only a petition to terminate the parental rights of the parent who does not have custody of the child.
(4) Notwithstanding s. 48.90(1)(a), the court may hold the hearing on the adoption petition immediately after entering the order to terminate parental rights under s. 48.427(3).