### In the Matter of the ADOPTION OF HILLIARD.

[Cite as In re Adoption of Hilliard, 154 Ohio App.3d 54, 2003-Ohio-4471.]

Court of Appeals of Ohio,
Third District, Logan County.

No. 8–03–13.

Decided Aug. 25, 2003.

Jerry M. Johnson, for appellant.

Peter Desomma, for appellee.

---

THOMAS F. BRYANT, Presiding Judge.

{¶ 1} Petitioner-appellant Diane Sutton ("Sutton") brings this appeal from the judgment of the Court of Common Pleas of Logan County, Probate Division, denying her petition to have visitation with her granddaughter continued after a stepparent adoption.

{¶ 2} On August 9, 1993, Brent Vermillion ("Vermillion") and Jill Lugar ("Lugar") were married. Divorce proceedings were filed by Lugar on February 9, 1994. Taylor Ann Lugar ("Taylor") was born to the couple on February 18, 1994. Lugar claimed that Taylor was not Vermillion's daughter and used Lugar's maiden name on the birth certificate. On July 18, 1994, the domestic relations court ordered DNA testing, which confirmed that Vermillion was Taylor's biological father. On August 19, 1994, Vermillion was sentenced to prison for burglary. The divorce proceedings were finalized on September 9, 1994.

{¶ 3} After several court proceedings, Sutton was granted visitation with Taylor. Sutton exercised Vermillion's rights. At first, Sutton's visits were supervised by Lugar and her parents. Eventually visits were unsupervised and Sutton was allowed to take Taylor to her home. Vermillion was released from prison in May 1999. Sutton's visitation was modified to be concurrent with Vermillion's visitation. Throughout all of this time, Sutton consistently exercised her visitation rights and formed a relationship with Taylor. Lugar made various attempts to terminate the visitation, but all attempts were denied by the court. All of the reports by the guardian ad litem recommended continuing visitation and agreed that Taylor had a close and important relationship with Sutton.

{¶ 4} On July 15, 2002, Lugar's second husband, Jeremy Hilliard ("Hilliard"), filed a petition to adopt Taylor. Vermillion consented to the adoption to avoid further responsibility for child support, and Lugar had agreed to forgive the accrued arrearage if Vermillion consented to the adoption. On October 8, 2002, Sutton filed a motion to intervene. Sutton's motion did not contest the adoption but requested that her visitation be permitted to continue after the adoption. Hilliard filed a motion objecting to the continued visitation on November 5, 2002. The adoption was granted on November 12, 2002, but the trial court withheld judgment on the issue of the visitation. On March 26, 2003, the trial court dismissed the motion to intervene for lack of jurisdiction. However, the trial court strongly recommended that Taylor be allowed to maintain contact with Sutton, as it was in her best interests. It is from this judgment that Sutton appeals and raises the following assignments of error:

"The probate court erred in finding that it did not have jurisdiction to grant [Sutton's] motion to intervene.

"The probate court erred in finding that it did not have jurisdiction to grant [Sutton's] motion to grant rights of visitation in adoption proceedings."

{¶ 5} In the first assignment of error, Sutton claims that the trial court erred by dismissing her motion to intervene. The Supreme Court of Ohio previously has addressed the issue of intervention in adoption proceedings by grandparents and held as follows:

"First, we note that there is no statutory basis for allowing the appellees to intervene. Under Civ.R. 24(A), a party has the right to intervene 'when a statute of this state confers an unconditional right to intervene.' Under Civ.R. 24(B), the judge may permit a party to intervene 'when a statute of this state confers a conditional right to intervene.' Unfortunately for the appellees, the relevant statutes * * * which govern all adoptions in Ohio, contain no provision giving the appellees either a conditional or an unconditional right to intervene. In fact, under R.C. 3107.11, the trial court is not even required to give the appellees notice of the adoption proceeding. R.C. 3107.11 does not mention

grandparents as persons who must be notified and appellees do not fit the description of any of the parties who are entitled to notification under R.C. 3107.11(A).

"Moreover, the appellees do not qualify as persons who must consent to an adoption pursuant to R.C. 3107.06. R.C. 3107.06, which requires the written consent of particular parties before an adoption petition may be granted, contains no reference to grandparents. Furthermore, appellees do not satisfy the description of any of the parties who are listed in R.C. 3107.06. Nonetheless, in their motions to intervene filed with the trial court, the appellees claim that the juvenile court's visitation order raises their standing to that of persons who must consent within the meaning of R.C. 3107.06(C). While it is not clear that the trial judge accepted this argument in granting the motions to intervene, we find that this contention is wholly without merit. R.C. 3107.06(C) provides that consent is required of '[a]ny person or agency having permanent custody of the minor or authorized by court order to consent.' As the appellees have never had permanent custody of the children, their argument must be that they were authorized by the juvenile court to consent to the adoption. However, the juvenile court's order contains no such language. * * *" *In re Adoption of Ridenour* (1991), 61 Ohio St.3d 319, 328–329, 574 N.E.2d 1055.

{¶ 6} In this case, the basis for Sutton's motion to intervene was the domestic relations court order that granted her visitation rights with Taylor. However, because she is not a person having the statutory right to intervene, the trial court did not err in dismissing her motion to intervene. The first assignment of error is overruled.

{¶ 7} In the second assignment of error, Sutton claims that the trial court erred in denying visitation to Sutton:

"Even if the juvenile court had the authority to set post-adoption terms and conditions, neither the juvenile court, nor the probate court, may consider the possibility of post-adoption visitation by biological grandparents following a stranger adoption. We reach this conclusion by examining the Ohio adoption statute and the policies behind it. R.C. 3107.15 provides, in pertinent part:

" '(A) A final decree of adoption and an interlocutory order of adoption that has become final, issued by a court of this state, shall have the following effects as to all matters within the jurisdiction or before a court of this state:

" '(1) Except with respect to a spouse of the petitioner and relatives of the spouse, to relieve the biological or other legal parents of the adopted person of all parental rights and responsibilities, and to terminate all legal relationships between the adopted person and his relatives, including his biological or other legal parents, so that the adopted person thereafter is a stranger to his former

relatives for all purposes including inheritance and the interpretation or construction of documents, statutes, and instruments, whether executed before or after the adoption is decreed, which do not expressly include the person by name or by some designation not based on a parent and child or blood relationship;

" '(2) To create the relationship of parent and child between petitioner and the adopted person, as if the adopted person were a legitimate blood descendant of the petitioner, for all purposes including inheritance and applicability of statutes, documents, and instruments, whether executed before or after the adoption is decreed, which do not expressly exclude an adopted person from their operation or effect.'

"On its face, this statute suggests that the children's relationship with their biological grandparents must be terminated once they are adopted. If that is the case, then a juvenile judge may not order that visitation continue post-adoption, and a trial judge may not consider grandparents' rights, or their attitude toward a potential adoptive family, in ruling on an adoption petition." Id. at 325, 574 N.E.2d 1055.

 {¶ 8} In this case, the trial court ruled that it did not have jurisdiction to grant visitation rights to Sutton. Specifically, the trial court made the following findings:

"In the case at bar, Intervener is requesting this Court recognize and enforce a prior order from the Domestic Relations Court that grants her grand parental rights of visitation. * * * [T]he court FINDS that this Court's prior order granting Diane Sutton's Motion to Intervene is hereby vacated and said Motion be and is hereby DISMISSED for lack of jurisdiction.

"The Court does, however, take this opportunity to note that it would not be in Taylor's best interests for Diane Sutton to be totally excluded from her life. Mrs. Sutton has been 'grandma' to Taylor her entire young life. It is the hope of this Court that, despite statutes, court cases, and the Ohio Supreme Court's rulings in this area, the parties will eventually find peace between them and allow Mrs. Sutton to have some level of significance in Taylor's life." March 26, 2003 judgment entry, at 2.

 {¶ 9} While the trial court does point out that it would be in the best interests of the child to continue the visitation, the trial court correctly ruled that under the holding in *Ridenour*, the trial court lacked the jurisdiction to order post-adoption visitation. The adoption statutes terminate all relationships held through the parent whose rights were terminated. Thus, the grandparents of the former parent no longer have any rights to visitation. Any connection with the child will have to be approved by the child's new parents. The second assignment of error is overruled.

{¶ 10} The judgment of the Court of Common Pleas of Logan County, Probate Division, is affirmed.

Judgment affirmed.

SHAW and CUPP, JJ., concur.