2004 SD 34

**In the Interest of D.M., Minor Child,**

**and**

**Concerning, The Department of Social Services, Appellees,**

**and**

**Faye and Kelly Degen, Appellants.**

**No. 22700.**

Supreme Court of South Dakota.

Argued Oct. 6, 2003.

Decided March 10, 2004.

---

Lawrence E. Long, Attorney General, Ann M. Holzhauser, Assistant Attorney General, Department of Social Services, Pierre, South Dakota, Attorneys for appellee DSS.

Todd A. Schweiger, Rapid City, South Dakota, Attorney for appellee Child.

Debra D. Watson of Watson, Roetzel & McGowan, Rapid City, South Dakota, Attorneys for appellants.

MEIERHENRY, Justice.

[¶ 1.] The child D.M. became eligible for adoption through the Department of Social Services (DSS) after the parental rights to the child were involuntarily terminated by the trial court. DSS began the process of finding an adoptive placement.

Accordingly, DSS approved three adoptive families, two of the families were relatives of D.M., the other was a non-related foster family.

[¶ 2.] DSS rejected both of the family placements, selecting the foster family for D.M.'s adoption. Faye and Kelly Degen, a great aunt and uncle, were one of the family placements. After the termination of the parental rights in the Abuse and Neglect (A & N) action and subsequent to DSS selecting the adoptive placement of the child, Degens filed a Motion to Intervene for the purpose of challenging DSS's selection and seeking placement of the child with them. DSS claimed that Degens were prohibited from intervening.

[¶ 3.] The trial court determined that Degens could not intervene as a matter of right, but could intervene if permitted by the court. Nonetheless, after a motion hearing, the trial court denied intervention because it would unduly delay D.M.'s adoption. We affirm. On appeal, Degens raise the following issue:

> **Whether Degens, as relatives of D.M., have the right to intervene in the A & N proceeding for the purpose of seeking adoptive placement of the child D.M. after they were approved but not selected by DSS.**

[¶ 4.] The issue in this case involves statutory interpretation which "is a question of law, which we review de novo." See *Coble v. Hanson*, 2001 SD 8, ¶ 5, 620 N.W.2d 772, 773 (citation omitted).

## DECISION

[¶ 5.] Degens argue that they should be allowed to intervene as a matter of right under SDCL 15-6-24(a). To permit intervention, a court must determine if the requirements of the statute are satisfied. The statute provides:

> Upon timely application anyone shall be permitted to intervene in an action:

> *(1) When a statute of the state confers an unconditional right to intervene; or*
> (2) When the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

*Id.* (emphasis added). In applying SDCL 15-6-24(a), we have said "[t]he purpose of intervention is to obviate delay and the multiplicity of suits by creating an opportunity to persons directly interested in the subject matter to join in an action or proceeding already instituted." *Mergen v. Northern States Power Co.*, 2001 SD 14, ¶ 5, 621 N.W.2d 620, 622.

[¶ 6.] Initially, it should be noted that SDCL 15-6-24(a) is a rule of civil procedure which only applies to certain proceedings in the Child Abuse and Neglect Statutes. SDCL Ch 26-7A. The law provides that only adjudicatory hearings are "conducted in accordance with rules of civil procedure." SDCL 26-7A-34(1). An adjudicatory hearing is "a hearing to determine whether the allegations of a petition alleging that a child is abused or neglected are supported by clear and convincing evidence or whether the allegations of a petition alleging a child to be in need of supervision or a delinquent are supported by evidence beyond a reasonable doubt." SDCL 26-7A-1(2). The Degens did not seek to intervene at the adjudicatory phase of the proceeding but instead sought to intervene in the post-dispositional phase of the case. The rules of civil procedure do not apply to "dispositional hearings and all other hearings ... [which] shall be conducted and designed to inform the court fully of the exact status of the child and to ascertain the history, envi-

ronment and past and present physical, mental and moral condition of the child and the child's parents, guardian or custodian." SDCL 26–7A–34(2). Since this was a review hearing following the court's decision to terminate parental rights, the rules of civil procedure do not apply. Consequently, SDCL 15–6–24(a)(1) does not provide Degens a right to intervene as a matter of law.

■ [¶ 7.] Neither do the A & N statutes give Degens the right to intervene. The law is silent as to intervention by a family member seeking to adopt. Adoptive placement responsibilities are delegated to DSS without further directive or guidance. The law provides:

> Upon the entry of the final decree of disposition terminating the parental rights of both parents or of the surviving parent, the court shall vest the Department of Social Services with the custody and guardianship of the person of the child for the purpose of placing the child for adoption and authorizing appropriate personnel of the department to consent to adoption of the child without need for any notice or consent of any parent of the child.

SDCL 26–8A–27.

[¶ 8.] In the 2002 legislative session, the South Dakota Legislature did expand the right to intervene in other (non-A & N)

1. SDCL 25–5–29 provides: Except for proceedings under chapter 26–7A, 26–8A, 26–8B, or 26–8C, the court may allow any person other than the parent of a child to intervene or petition a court of competent jurisdiction for custody or visitation of any child with whom he or she has served as a primary caretaker, has closely bonded as a parental figure, or has otherwise formed a significant and substantial relationship. It is presumed to be in the best interest of a child to be in the care, custody, and control of the child's parent, and the parent shall be afforded the constitutional protections as determined by the United States Supreme Court and the South

child custody cases and in certain circumstances gave non-related primary caretakers the right to intervene.[1] SDCL 25–5–29. The law specifies a parent's presumptive right to the custody of his or her child but allows that presumption to be rebutted by a non-relative intervenor. However, the legislature specifically excluded the right to intervene in A & N proceedings.

■ [¶ 9.] Degens, pointing to the adoption statutes, argue that the adoption statutes contemplate possible challenges to adoptions and, in effect, support their right to intervene. The adoption statute provides that when an order of adoption is challenged, the court is required to "give due consideration to the interests of the parties." SDCL 25–6–2. Degens contend if a third party is not allowed to intervene and challenge the adoption, why would the statute specifically require the court to consider the "interests of the parties." The statute provides:

> In an adoption proceeding or in any proceeding that challenges an order of adoption or order terminating parental rights, the court shall give due consideration to the interests of the parties to the proceedings, but shall give paramount consideration to the best interests of the child.

Dakota Supreme Court. A parent's presumptive right to custody of his or her child may be rebutted by proof:

(1) That the parent has abandoned or persistently neglected the child;
(2) That the parent has forfeited or surrendered his or her parental rights over the child to any person other than the parent;
(3) That the parent has abdicated his or her parental rights and responsibilities; or
(4) That other extraordinary circumstances exist which, if custody is awarded to the parent, would result in serious detriment to the child.

*Id.* The proceeding in this case, however, was not an adoption proceeding, it was an A & N proceeding. Whether Degens have a right to intervene in a subsequent adoption proceeding is not the issue in this case nor was it raised or briefed by the parties.

[¶ 10.] Degens rely on an Iowa Court of Appeals case to support their right to intervene. The Iowa court held that a couple wishing to adopt had the right to intervene in an A & N proceeding as "interested persons" under a rule of civil procedure similar to SDCL 15–6–24(a)(2). *In the Interest of C.L.C. and A.M.B. Children, S.A.B. and M.D.B. Husband and Wife, Appellants*, 479 N.W.2d 340 (Iowa App.1991). The Iowa court relied on specific language of an Iowa statute that allowed the court to transfer guardianship and custody of a child to "a relative or other suitable person" following termination of parental rights. IA ST § 232.117(3).[2] The Iowa court determined that as suitable persons the couple had a legal right to intervene. In contrast, South Dakota statutes do not give the "relatives or other suitable persons" the right to be considered as guardians. South Dakota law directs that *"the court shall vest the Department of Social Services* with the custody and guardianship of the person of the child."* SDCL 26–8A–27. (emphasis added). Our analysis must rely on the language of the South Dakota statute which is clearly distinguishable from the statute relied upon by the Iowa court.

■ [¶ 11.] The trial court here considered permitting Degens to intervene but ultimately determined that it was not in D.M.'s best interests to unduly delay the proceedings. Although the trial court did consider Degens' request to intervene, the court ultimately denied it for reasons other than expressed in this opinion. " 'This court has consistently held that where the trial court reaches the right result it will not be reversed even though based on erroneous conclusions or wrong reasons.' " *Communication Tech. Sys., Inc. v. Densmore*, 1998 SD 87, ¶ 20, 583 N.W.2d 125, 130 (citing *Owens v. City of Beresford*, 87 S.D. 8, 15, 201 N.W.2d 890, 893 (1972)). At this point our legislature has not provided relatives of abused and neglected minors a legal right to intervene in post dispositional A & N proceedings for the purpose of challenging DSS's adoptive placement. We hold that the Degens did not have a right to intervene. Therefore, the decision of trial court is affirmed.

[¶ 12.] GILBERTSON, Chief Justice, and KONENKAMP and ZINTER, Justices, concur.

[¶ 13.] SABERS, Justice, dissents.

SABERS, Justice (dissenting).

[¶ 14.] I dissent. The majority opinion 1) provides DSS unwarranted power to dictate to trial courts the placement of children for adoption; 2) turns a trial courts' grant of adoption in cases like this into a rubber stamping formality; 3) permits DSS to disregard its own policies regarding placement preference; and 4) prevents families from stepping into the breach when parental rights are terminated and DSS prefers, for whatever reason, another adoptive placement. This is a dis-

---

**2.** If the court terminates the parental rights of the child's parents, *the court shall transfer the guardianship and custody of the child to one of the following:*
  a. The department of human services.
  b. A child-placing agency or other suitable private agency, facility or institution which

is licensed or otherwise authorized by law to receive and provide care for the child.
  c. A parent who does not have physical care of the child, other relative, or other suitable person.
IA ST § 232.117(3) (emphasis added).

service to our children, our families, and our State.

[¶ 15.] As the majority opinion notes, the motion to intervene was made after both parents' rights had been terminated.[3] The terminations were final adjudications and the court retained jurisdiction only for "purposes of review of status of the child until the adoption of the child is fully completed." SDCL 26–8A–27; SDCL 26–8A–29. The motion to intervene was made at a "post termination review" on September 16, 2002.[4] Therefore, "[w]hether Degens, as relatives of D.M., have the right to intervene *in the A & N proceeding*" (emphasis supplied) is an irrelevant question. The parties in this case were subject to SDCL chapter 25–6, the adoption statutes. Furthermore, the Degens have a legally protectable interest and a right of intervention. I would reverse and remand, allowing Degens their right to intervene in the adoption proceedings with regard to D.M.

[¶ 16.] **1. This decision should have been made under SDCL chapter 25–6 since the abuse and neglect proceedings were final.**

[¶ 17.] A careful review of SDCL Chapter 26–7A and 8A reveals that A & N proceedings are for the purposes of determining whether a child is abused or neglected and if so, taking appropriate measures regarding the child's disposition. If a child is found abused and neglected, the trial court proceeds to a dispositional hearing. That phase will determine parents' status as to the child, with primary weight given to the child's best interest. SDCL 26–8A–26; SDCL 26–8A–27; SDCL 26–8A–29. If the court makes the determina-

tion that parental rights should be terminated, an order is entered and the child is placed in the custody of DSS for adoption. SDCL 26–8A–27.

[¶ 18.] There are no provisions under SDCL Chapter 26–7A or 26–8A for determining who the adoptive parents will be, nor should there be, since South Dakota has a separate statutory scheme for adoption under SDCL Chapter 25–6. The majority opinion's determination that Degens are not entitled to intervene in the A & N proceeding misses the mark. The correct question is whether a third party relative, who has been approved for adoptive placement, is entitled to be heard before a child is permanently placed with an unrelated family based solely on DSS recommendations. The answer is an unequivocal yes; our concern for the best interests of the child demands *full* consideration of *all* relevant facts in making the adoption placement.

[¶ 19.] SDCL 25–6–2 provides in part:

In an adoption proceeding or in any proceeding that challenges an order of adoption or order terminating parental rights, the court *shall give due consideration to the interests of the parties* to the proceedings, but shall give paramount consideration to the best interests of the child.

The Department requested that the Degens allow themselves to be considered as an adoptive placement. They underwent a home study and DSS investigation. They were approved. Then they were denied contact with the child, and found out only a week prior to the first hearing on the motion to intervene that they were not going to be considered as an adoptive

---

3. Mother's rights were terminated on January 28, 2002. Father's rights were terminated on October 16, 2001 and this Court summarily affirmed that termination on July 26, 2002.

4. At this hearing, counsel for Degens made a point of informing the court that they were not attempting to intervene in the A & N.

placement. The Degens are blood relatives of the child with a desire to raise the child within her own family. Certainly they were an interested party in the adoption proceedings.

[¶ 20.] The conduct of DSS is especially arbitrary and unreasonable in these circumstances. First, it invites D.M.'s relatives into the proceeding by approving them for adoptive placement. Second, it causes them to get their hopes up and then third, attempts to cut off their chances without a hearing on the merits. This conduct then is approved by the trial court because it would cause "undue delay." Nonsense. What difference is a matter of hours, days or even two weeks if that is what is necessary to find the best adoptive parents for this child? To finalize these proceedings without a hearing on the merits as to the "best" adoptive parents prevents the "best interests of the child" from being properly determined and results in an abuse of discretion. Furthermore, there is nothing in either the adoption statutes or the A & N provisions that requires analysis of whether hearing evidence on the child's best interest will cause "undue delay." At the least, the trial court abused its discretion in denying intervention based on a finding that it would cause undue delay. By denying intervention, the trial court substantially increased the delay by necessitating an appeal to this Court. An evidentiary hearing could have easily been concluded in much less time than this appeal will take.

[¶ 21.] The majority opinion asserts that this was not an adoption proceeding and that the question whether the Degens have a right to intervene in a subsequent adoption proceeding is not in issue. Assuming the majority opinion is correct is its assertion that this is not an adoption proceeding, I would respectfully point out that refusing to consider whether the De-

gens can intervene in a subsequent adoption proceeding merely extends the "undue delay" the trial court was concerned about. Now the case can go back to the circuit court for consideration of the adoption, the Degens can attempt to intervene again, the court can deny intervention and the parties can once again bring this case back before this Court.

[¶ 22.] I agree with the general proposition that a child needs permanence as quickly as the court and DSS can provide it. However, haste is seldom a virtue that would lead to adequate consideration of a child's best interests, and in this case, the concern about undue delay has prolonged this process by months.

[¶ 23.] **2. The Degens have a protectable interest.**

[¶ 24.] Assuming for the moment that the majority opinion is correct in its determination that this case is still under SDCL chapter 26–8A, the opinion improperly comes to the conclusion that Degens had no right of intervention. SDCL 26–7A–34 provides in part:

Hearings under [chapter 26–7A] and chapters 26–8A, 26–8B and 26–8C *shall* be conducted as follows:

(1) Adjudicatory hearings shall be conducted in accordance with rules of civil procedure under chapter 15–6, except as otherwise provided in this chapter; and

(2) Dispositional hearings and all other hearings shall be tried to the court and shall be conducted and *designed to inform the court fully of the exact status of the child* and to ascertain the history, environment and past and present physical, mental and moral condition of the child and of the child's parents, guardian or custodian.

(Emphasis supplied.) SDCL 26–7A–56 provides in part:

[T]he rules of civil procedure and the rules of evidence apply to adjudicatory hearings. *All other hearings shall* be conducted under rules prescribed by the court. The rules may be designed by the court *to inform the court fully of the exact status of the child* and to ascertain the history, environment and the past and present physical, mental and moral condition of the child and the child's parents, guardian and custodian, as may be necessary or appropriate to enable the court to determine suitable disposition of the child according to the least restrictive alternative available in keeping with the child's best interests and with due regard for the rights and interests of the parents, guardian, custodian, the public and the state.

(Emphasis supplied.) The Legislature left no doubt of its intention that the rules of civil procedure be relaxed during the dispositional phase. The Legislature also made it clear that the trial court was to *fully* inform itself of the child's circumstances, including their "history, environment and the past and present physical, mental and moral condition[.]" *Id.* It is undeniably in the best interest of the state and the public to preserve family ties whenever it is possible. The majority opinion leaves courts in the position of ignoring the fact that relatives of the child are available, interested, and approved for adoption whenever DSS expresses a preference for another family. This is an unwarranted expansion of the scope of DSS power and authority. DSS does not have unlimited authority over final adoptive placement. Rather, DSS selection of adoptive parents is subject to the court's review and final approval. The court has the ultimate responsibility to determine the best interest of a child throughout the proceeding, including adoption. The majority opinion elevates DSS from the advisory and investigative role contemplated by the Legislature and presses trial courts into abdicating their role as the final arbiter of the best interest of the child.

[¶ 25.] The majority opinion concludes that there is no statutory authority providing the Degens' with a right of intervention. I disagree. DSS' internal policies provide the Degens a legally protected right to a preference above the foster family. This right gives them a legally protected interest in the dispositional proceedings. The South Dakota A & N statutes are silent as to preference for adoptive placement. They merely direct that DSS be vested with custody and guardianship "for the purpose of placing the child for adoption and authorizing appropriate personnel of the department to consent to adoption of the child[.]" SDCL 26–8A–27. By referring to well-settled law regarding a court's review of agency determinations, we can overcome the perceived lack of legislative guidance in this area.

[¶ 26.] In *Chevron,* the United States Supreme Court clarified the role of courts and agencies when an agency is charged with the responsibility of administering a statute. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694. In the instant case, the Legislature has clearly given DSS the responsibility of investigation and recommendation in adoption proceedings. *See* SDCL 26–8A–27. *Chevron* held that when the court reviews an agency's construction of a statute, it must make two inquiries:

1) Has Congress directly spoken to the precise question at issue? *Chevron,* 467 U.S. at 842–843, 104 S.Ct. at 2781–2782, 81 L.Ed.2d 694. If Congress' intent is clear, the court and agency are bound to give effect to the expressed intent. *Id.* As the majority opinion

notes, under the A & N statutes, the Legislature is silent as to preferential placement order for adoption. Therefore, the Court "does not simply impose its own construction on the statute as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court" is:

> 2) Whether the agency's answer is based on a permissible construction of the statute.

*Id.* The Supreme Court clarified further, holding:

> The power of an administrative agency to administer a congressionally created ... program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress. If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute. Sometimes the legislative delegation to an agency on a particular question is implicit rather than explicit. In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.

*Id.* Under the authority granted to DSS through SDCL chapter 26–8A, ARSD 67:14:30 and ARSD 67:14:31, DSS has promulgated a "Procedures Manual." This manual is given to case workers to guide and assist them in making appropriate assessments of children and their circumstances and making recommendations regarding foster care and adoption placement. On page six of that manual, DSS specifically provides an order of preference for permanent placement. At the top of the list of preferences is the "birth family," which includes, "father, mother, grandparents, uncles, aunts, cousins, and other persons identified by the child's family as significant others[.]" I submit that even under that portion of *Chevron* giving the least deference to agency regulations, this policy guideline is "reasonable" and should be enforced. Even in the absence of explicit Legislative directive, this Court has clear guidance in the guidelines of the agency as to family preference. The guideline is entitled to controlling weight. *Chevron,* 467 U.S. at 843, 104 S.Ct. at 2782, 81 L.Ed.2d 694. Therefore, these internal policies give the Degens a legally protectable right to a preference above the foster family. This right could only be protected by intervening in the adoption proceeding and the trial court abused its discretion in holding otherwise.

[¶ 27.] I would reverse and remand for a hearing on the merits.