2006 SD 15

**In the Matter of the ADOPTION OF a Child known as D.M.**

No. 23434.

Supreme Court of South Dakota.

Argued on April 26, 2005.

Reassigned July 22, 2005.

Decided Feb. 8, 2006.

---

Debra D. Watson of Watson & McGowan, L.L.P., Rapid City, SD, for proposed intervenors and appellants Degens.

Jean M. Cline of Feehan & Cline, P.C., Rapid City, SD, for adoptive parents and appellees.

Lawrence E. Long, Attorney General, Ann M. Holzhauser, Assistant Attorney General, Pierre, SD, for appellee State of South Dakota.

MEIERHENRY, Justice (on reassignment).

[¶ 1.] Faye and Kelly Degen (Degens) sought to intervene in the adoption proceedings of their grandniece, D.M. The trial court denied Degens' motion to inter-

vene and entered an order and decree of adoption. Degens appeal. We affirm.

## FACTS

[¶ 2.] Degens originally sought to intervene in the abuse and neglect proceedings in which parental rights to D.M. were terminated. The Department of Social Services (DSS) had approved Degens as an adoptive family along with two other families but ultimately recommended adoptive placement with a nonrelative family.[1] After being denied a right to intervene in the abuse and neglect proceeding, the Degens sought relief from this Court. *See In re D.M.*, 2004 SD 34, 677 N.W.2d 578. On appeal, we held that the rules of civil procedure did not give Degens the right to intervene in the dispositional phase of the abuse and neglect proceeding. *Id.* ¶ 11. Subsequently, the foster family with whom DSS had placed D.M. filed a petition to adopt the child. Degens then sought to intervene in the adoption proceeding. Again, Degens' motion to intervene was denied. Degens appeal and raise the following issue.

## ISSUE

**Whether a relative approved by DSS for placement can intervene as a matter of right and challenge the agency's proposed adoptive placement with unrelated foster parents.**

## DECISION

*Right to Intervene Pursuant to SDCL 15–6–24(a)*

[¶ 3.] The trial court held that because Degens do not have an independent legal right to adopt D.M., they do not have standing to intervene in the adoption proceeding. On appeal, Degens assert that they have a legally protected interest in D.M. making them real parties in interest. They assert that intervention is necessary to enable the trial court to determine the best adoptive placement for D.M. Since the issue involves a question of law, our review is de novo. *Id.* ¶ 4.

[¶ 4.] Degens base their right to intervene on SDCL 15–6–24(a)(2), which provides:

> Upon timely application anyone shall be permitted to intervene in an action: ...
>
> (2) When the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

This is a court rule the purpose of which is "to obviate delay and multiplicity of suits by creating an opportunity to persons directly interested in the subject matter to join in an action or proceeding already instituted." *Mergen v. N. States Power Co.*, 2001 SD 14, ¶ 5, 621 N.W.2d 620, 622. We have emphasized that intervention is strictly procedural and "that intervention standards are flexible, allowing for some tailoring of decisions to the facts of each case." *Southard v. Hansen*, 342 N.W.2d 231, 233–34 (S.D.1984) (citing *Kozak v. Wells*, 278 F.2d 104 (8thCir.1960)).

[¶ 5.] South Dakota's court rule SDCL 15–6–24(a)(2) is almost identical to

---

1. D.M. became eligible for adoption through DSS after the parental rights to the child were involuntarily terminated. Through the process of finding adoptive placement, DSS approved three adoptive families. Two of the families were relatives of D.M., the other was a non-related foster family. DSS rejected both of the family placements and selected the foster family for D.M.'s adoption.

Federal Rule of Civil Procedure 24(a)(2).[2] The Eighth Circuit Court of Appeals construes Rule 24 liberally in favor of the intervenor. *United States v. Union Elec. Co.*, 64 F.3d 1152, 1158 (8thCir.1995). Citing to numerous Eighth Circuit cases, the federal court explained:

> In our review, Rule 24 is construed liberally, and we resolve all doubts in favor of the proposed intervenors. *Kansas Pub. Employees Retirement Sys. [v. Reimer Koger Assocs., Inc.]*, 60 F.3d [1304,] 1307 [(8th Cir.1995)]; *Sierra Club v. Robertson*, 960 F.2d 83, 86 (8th Cir.1992) (doubts resolved in favor of proposed intervenor); *Arkansas Elec. Energy Consumers v. Middle S. Energy, Inc.*, 772 F.2d 401, 404 (8th Cir.1985) (Rule 24 is to be liberally construed); *Corby Recreation, Inc. v. General Electric Co.*, 581 F.2d 175, 177 (8th Cir.1978) (doubts should be resolved in favor of proposed intervenor); *Kozak v. Wells*, 278 F.2d 104, 111–12 (8th Cir.1960) (Rule 24 is to be liberally construed).

*Id.* The Eighth Circuit requires the applicant to "satisfy a tripartite test in order to intervene." *Id.* at 1160. The tripartite test is as follows:

> 1) the party must have a recognized interest in the subject matter of the litigation; 2) that interest must be one that might be impaired by the disposition of the litigation; and 3) the interest must not be adequately protected by the existing parties.

*Id.* 1160–61 (citation omitted). We adopt this tripartite test and apply it to the instant case.

*Whether Degens have a Recognized Interest in D.M.'s Adoption*

■ [¶ 6.] Applying the tripartite test in this case, we must first determine if Degens have a recognized interest in the subject matter of the litigation. The Eighth Circuit, in analyzing what constitutes a "recognized interest" sufficient to satisfy the rule, said:

> Although ... this court defined an interest sufficient to support intervention as "a recognized interest in the subject matter of the litigation," the courts of appeals of other circuits have stated that intervention requires that the intervenor have an interest in the proceedings that is "direct, substantial, and legally protectable." These standards are not contradictory. The applicant for intervention must have an interest in the subject matter of the litigation, *i.e.*, an interest that is "direct," as opposed to tangential or collateral. Furthermore, that interest must be "recognized," *i.e.*, both "substantial" and "legally protectable."

*Id.* at 1161 (citations omitted). We have applied a similar test to determine the sufficiency of an interest. We stated in *Jackson v. Board of County Commissioners for Pennington County*:

> "While the intervention statutes of the states differ, there is a general concurrence in the decisions that the interest which entitles a person to intervene in a suit between other parties must be in the matter in litigation and of such direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the

**2.** The Federal rule provides:

> Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so

situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a).

judgment. The interest must be one arising from a claim to the subject matter of the action or some part thereof, or a lien upon the property or some part thereof; one whose interest in the matter of litigation is not a direct or substantial interest, but is an indirect, inconsequential, or contingent one, cannot intervene."

76 S.D. 495, 500, 81 N.W.2d 686, 689 (1957) (quoting 39 Am.Jur. Parties § 61). It therefore follows that before Degens can intervene, they must be able to show that they have a recognized interest in the litigation. Their interest must be "of such direct and immediate character that [they] will either gain or lose by the direct legal operation and effect of the [adoption order]." *Id.* Their interest must also "arise[ ] from a claim to the subject matter of the action," *id.*, and it must be "direct, substantial, and legally protectable." *Union Electric*, 64 F.3d at 1161.

[¶ 7.] Degens claim that their legally protectable interest stems from a provision in DSS's Child Protection Services Procedures Manual, 06–03. The manual is given to case workers to guide and assist them in making appropriate assessments of children and their circumstances and in making recommendations regarding foster care and adoption placement. The manual provides in relevant part:

> The order of preferences for a permanent family is:
>
> 1. Birth Family
>    Father, mother, grandparents, uncles, aunts, cousins, and other persons identified by the child's family as significant others should be sought out as permanent families to provide care for the child.

Furthermore, the manual provides that "[w]hen it is impossible for a child to live with birth family members who may, or may not adopt, the Department attempts to place the child with a non-related adoptive family." Degens argue that since DSS placed the child with non-related foster parents for adoption, no one is representing D.M.'s birth family. They contend that it is in the child's best interest to be adopted by family members. Unless they are allowed to intervene, they claim that the court will be unable to weigh the importance of familial ties when determining D.M.'s best interests. Degens further argue that leaving the adoption selection entirely within the discretion of DSS "runs afoul of the court's statutory duty to do what is in the child's best interest."

[¶ 8.] The South Dakota Legislature agreed that family members of abused and neglected children wishing to adopt should have a right to intervene. That right was established, however, as part of the abuse and neglect proceedings. The 2005 Legislature amended the abuse and neglect statutes to require DSS to give placement preference to relatives in both temporary and permanent placement of abused and neglected children. *See* 2005 SD Laws ch 140 §§ 1–2; *see also* SDCL 26–7A–19; SDCL 26–7A–19.1. As amended, the law defines the term "relative" as "an adult who is related to the child by blood, adoption, or marriage, and who is the child's grandparent, aunt, uncle, sibling, brother-in-law, sister-in-law, niece, nephew, great grandparent, great uncle, great aunt, first cousin, second cousin, stepparent, or stepsibling." SDCL 26A–7A–19. Additionally, the Legislature enacted a new provision specifically giving relatives who were denied adoptive placement the right to intervene. *See* 2005 SD Laws ch 140, § 3; *see also* SDCL 26–8A–29.1. The law now provides that "any relative who has been denied adoptive placement by the Department of Social Services may request a hearing to determine if the placement was

an abuse of discretion." SDCL 26–8A–29.1.

[¶ 9.] Unfortunately for Degens, the legislation came too late. All abuse and neglect proceedings involving D.M. had been completed prior to the new law taking effect. Consequently, the only avenue of challenge left for Degens was through the adoption proceedings. The adoption statutes, however, do not specifically give family members the right to intervene. When the Legislature added the right to challenge adoptive placement, it did so only as part of the abuse and neglect proceedings.[3]

[¶ 10.] We have long recognized that "adoption is a creature of statute." *Calhoun v. Bryant*, 28 S.D. 266, 133 N.W. 266, 270 (1911). Consequently, the rights and procedures for adoption are governed by statute. Challenges to adoptions are likewise controlled by statute. The language of SDCL 25–6–2 appears to contemplate challenges but does not indicate who the challengers might be. It provides:

> In an adoption proceeding or in any proceeding that challenges an order of adoption or order terminating parental rights, the court shall give due consideration to the interests of the parties to the proceedings, but shall give paramount consideration to the best interests of the child.

*Id.* The only persons identified as participants or parties to an adoption are the persons adopting the child, the child, DSS, and other persons whose consent is necessary. *See* SDCL 25–6–3; SDCL 25–6–4;

SDCL 25–6–10; SDCL 25–6–11; SDCL 25–6–12. Beyond these identified parties and participants, the statutes do not specifically recognize any other possible intervenors. Further, the statutes do not address familial preference of any sort.

[¶ 11.] Courts from other jurisdictions have addressed this issue with varying results. The cases, however, offer little guidance because of their dependence on their own state statutes. *See, e.g., Baker v. Webb*, 127 S.W.3d 622, 626 (Ky.2004) (holding that biological relatives had the right to intervene in an adoption proceeding); *In re BC*, 1988 OK 4, 749 P.2d 542, 545 (concluding that foster parents had standing "to intervene and to assert their justiciable interest" in an adoption proceeding because they stood "in loco parentis"); *In re Adoption of B.T.*, 150 Wash.2d 409, 78 P.3d 634, 639 (2003) (concluding that a paternal grandmother and step-grandfather had standing to petition for adoption by broadly interpreting the standing requirement of Washington's adoption statutes). *But see, e.g., In re Adoption of C.C.L.B.*, 2001 MT 66, ¶¶ 19–20, 305 Mont. 22, 22 P.3d 646, 650 (concluding that second cousins had no "direct, substantial, legally protectable interest" in adoption despite legislative and departmental policies that favored adoptive placement with extended family members because second cousin was not " 'extended family members' as that *term is employed* in Montana adoption law"); *In re Adoption of J.C.G.*, 177 Wis.2d 424, 428, 501 N.W.2d 908, 910 (1993) (conclud-

---

**3.** The concurrence correctly points out that the Legislature specifically foreclosed intervention in an adoption proceeding under the abuse and neglect statutes. SDCL 26–8A–29.1 specifically states that "[n]o intervention may be allowed in a proceeding involving an apparent, alleged, or adjudicated abused or neglected child, including an adoption or guardianship proceeding for a child placed in

the custody of the Department of Social Services pursuant to 26–8A–27, except as provided by this chapter and under the Indian Child Welfare Act, (25 U.S.C. §§ 1901 to 1963, inclusive), as amended to January 1, 2005." That provision, however, was enacted in 2005. *See* 2005 SD Laws ch. 140, § 3. Therefore, it *does not* apply to the Degens' case, which was filed and determined in 2004.

ing that grandparents did not have standing to intervene in the adoption of their grandchildren because only those who were qualified to petition for adoption under Wisconsin law had a "legally protectable interest in the adoption").

[¶ 12.] As with the cases from other jurisdictions, our decision is controlled by our own state statutes. Although the Legislature amended the abuse and neglect statutes to give certain family members standing to intervene, it did not afford the same rights in the adoption statutes. Neither do we find that the policies espoused in the DSS manual give Degens a legally protectable interest. We are sympathetic to Degens' plight and their commendable efforts to enlist the assistance of the court in the adoption of their grandniece. Nevertheless, we cannot stretch the definition of a legally protectable interest to include an internal policy statement in an employee manual written by DSS. Adoption rights and procedures are created by the Legislature. At this point, the Legislature has only recognized the right to intervene as part of the abuse and neglect proceedings. These are policy decisions best left to the Legislature. Unfortunately, we must again decline Degens' request to participate in proceedings involving D.M.

[¶ 13.] We hold that Degens do not have a right to intervene under SDCL 15–6–24(a)(2) in the adoption of D.M. We affirm.

[¶ 14.] KONENKAMP, Justice, concurs.

[¶ 15.] GILBERTSON, Chief Justice and ZINTER, Justice, concur with a writing.

[¶ 16.] SABERS, Justice, dissents.

---

**4.** Degens did not make an argument for permissive intervention under SDCL 15–6–24(b)

ZINTER, Justice (concurring).

[¶ 17.] I concur because, in addition to the Court's analysis, most courts conclude that relatives do not have a legally protectable interest in another relative's adoption. Lacking a legally protectable interest in their grandniece's adoption, Degens were not entitled to intervene as a matter of right under SDCL 15–6–24(a)(2).[4] I also write because the Legislature has explicitly precluded such interventions in adoptions. Therefore, *Degens'* public policy arguments do not provide an alternative right of intervention.

[¶ 18.] As the Court notes, South Dakota's intervention statute is almost identical to Federal Rule of Civil Procedure 24(a)(2), which is generally construed liberally in favor of the proposed intervenor. *United States v. Union Elec. Co.*, 64 F.3d 1152, 1158 (8thCir.1995). Liberality, however, "'does not equate with rights of indiscriminate intervention' and the rule continues to set bounds that must be observed." 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1904 (2d ed. 1986). The rule must be followed to protect the "original parties['] ... interest in the prompt disposition of their controversy and the public['s] ... interest in efficient disposition of court business." *Id.* This case demonstrates the reason for this caveat because D.M.'s termination of parental rights and adoption proceedings, including two intervention attempts and two appeals to this Court, have now consumed four of the nine years of her life.

[¶ 19.] Under Rule 24, most jurisdictions conclude that after a child has been placed for adoption, even close relatives wishing to adopt lack the legally protectable interest necessary to intervene and

---

or an argument for intervention as a matter of right under SDCL 15–6–24(a)(1).

litigate as a matter of right. *See In re Adoption of H.M.C.*, 11 S.W.3d 81, 89–90 (Mo.Ct.App.2000) (using the Missouri Supreme Court's definition of "interest" to conclude that even closer relatives (grandparents) did not have the legally protectable interest necessary to intervene as a matter of right under Missouri's similar version of Rule 24); *In re Adoption of C.C.L.B.*, 305 Mont. 22, 28–29, 22 P.3d 646, 650 (2001) (concluding that the public policy underlying various statutes and department policies did not provide relatives with a legally protectable interest under a similar version of Rule 24); *In re Adoption of Hilliard*, 154 Ohio App.3d 54, 56, 796 N.E.2d 46, 48 (2003) (concluding that relatives have no "conditional or . . . unconditional right to intervene"); *Christian Placement Serv. v. Gordon*, 102 N.M. 465, 472, 697 P.2d 148, 155 (N.M.Ct.App.1985)

(concluding that a relative, "[s]imply by virtue of her status of grandparent," was not able to intervene as a matter of right) (partially superseded by statute); *Petition of Benavidez*, 52 Ill.App.3d 626, 628, 367 N.E.2d 971, 973, 10 Ill.Dec. 362, 364 (1977) (holding that relatives have no "right to intervene in a private adoption where there is no question of the fitness of the adopting parents or the correctness of the mother's consent, but only the question of whether the grandparents have a preference"); *In re Adoption of Taylor*, 678 S.W.2d 69, 71–72 (Tenn.Ct.App.1984) (concluding that "[t]here is nothing in the statute [that] provides for the intervention of grandparents [in the adoption proceeding,] and we see no useful purpose in their being permitted to do so as a matter of right").[5]

**5.** The Court cites three cases suggesting that some states have, under different statutes, permitted relatives to intervene in adoption proceedings. *See supra* ¶ 11. While the Court acknowledges that these cases "offer little guidance because of their dependence on their own state statutes," the cases actually provide no guidance in determining the right to intervene under Rule 24.

*In re Adoption of B.T.*, 150 Wash.2d 409, 78 P.3d 634 (2003), is inapposite because it only involved the question of standing; *i.e.*, who could petition for adoption. The Washington court noted that "the issue before [that court was] whether grandparents [had] standing to even petition the court for the adoption of their grandchild." *Id.* at 417, 78 P.3d at 638. In answering that question, the court looked "to the statutes to define *standing* in the adoption process." *Id.* (emphasis added). Thus, *In re Adoption of B.T.* did not involve the right to intervene in a third party's adoption under Rule 24.

In *Baker v. Webb*, 127 S.W.3d 622 (Ky. 2004), a divided court did consider a biological relative's (second cousin's) request for intervention as a matter of right under Rule 24. Although the court found a sufficient interest, the case involved statutes and formally adopted administrative regulations that clearly provided "a preference for relative place-

ment in *adoption* proceedings." *Id.* at 625 (emphasis added). Thus, a legally protectable interest was provided by statute. However, as is explained hereinafter, South Dakota does not have a regulation or statute granting such a preference in adoption proceedings.

Finally, in *Matter of B.C.*, 749 P.2d 542 (Okla.1988), the Oklahoma Supreme Court concluded that foster parents could intervene as a matter a right because they were "in loco parentis." *Id.* at 545. Under Oklahoma law, " 'in loco parentis' means in place of a parent, and a 'person in loco parentis' [is] defined as one who has assumed the status and obligations of a parent without a formal adoption." *Id.* (citation omitted). Therefore, the foster parents, who had cared for and treated the child as a member of their family for approximately six and a half years, were "persons in loco parentis." *Id.* Their status as "persons in loco parentis" also provided them with "standing to intervene and to assert their justiciable interest in the adoption." *Id.* Unlike *Matter of B.C.*, however, D.M. has never become a member of the Degen family by residing with them for an extended period of time. Therefore, Degens did not possess *in loco parentis* status. On the contrary, only the foster family (who ultimately adopted D.M.) held *in loco parentis* status sufficient to

[¶ 20.] Rather than citing contrary authority, Degens rely upon a public policy for a family preference underlying a 2005 legislative enactment. *See* 2005 SD Sess. Laws Ch. 140, §§ 1–3 (amending SDCL 26–7A–19 and enacting SDCL 26–7A–19.1 and 26–8A–29.1 effective July 1, 2005). I agree with the Court's observation that this legislation came "too late" to benefit Degens, and the legislation only provides a family preference in the abuse and neglect proceedings.[6] *Supra* ¶ 9.

[¶ 21.] Furthermore, even if the 2005 legislation applied, it explicitly prohibited a relative's intervention in an adoption proceeding. Newly enacted SDCL 26–8A–29.1 plainly states "[n]o intervention may be allowed in ... an adoption ... proceeding." Thus, the 2005 legislation could not have confirmed some public policy allowing Degens' claim of right to intervene in a relative's adoption.[7]

[¶ 22.] The Legislature's express prohibition regarding intervention in adoption proceedings is understandable, considering strong countervailing public policies. An Illinois court explained one such countervailing public policy:

> We note also that there is a grave matter of public policy implicit in the contention of the grandparents that they have a right to intervene because they are the grandparents and are the preferred parties in an adoption case. In the absence of a statute giving the grandparents a preference (which might be unconstitutionally discriminatory) where are we to stop in allowing relatives to block a proposed adoption? Is an uncle or aunt in a less favorable position than a grandparent? Indeed, an adult cousin may have closer ties to the child than a grandparent. In many countries it is customary for a brother to adopt his deceased brother's children and the cases are legion in both fact and fiction, viz., David Copperfield and Tom Sawyer, of an aunt adopting a deceased sister's child. How can we draw the line at grandparents? Are we to subject every adoption to the hazard of being disrupted or pre-empted by an intervening relative who learns of it midway in

---

establish a legally protectable interest under the reasoning of *Matter of B.C.*

6. I also agree that DSS's internal policy of providing adoptive preference to family members, as reflected in its procedures manual, does not provide Degens with a legally protectable interest. *See supra* ¶ 12. The policy is only an executive branch policy that guides and assists DSS employees in making their discretionary recommendations for placement and adoption. The policy does not, however, purport to extend a legally protectable interest in extended relatives. In fact, because DSS's internal procedure manual was not adopted as an administrative rule of South Dakota, it could not have afforded Degens a legally protectable interest in the adoption of any child. Internal policies generally do not create a legally protectable interest because only duly "adopted" rules express "the will of the" State, and only duly "adopted" rules have the "force of law." *See* SDCL 1–1–23

(providing that the will of the sovereign is expressed through various methods including "[r]ules of practice and procedure ... adopted by departments"); *Reid v. Huron Bd. of Educ.*, 449 N.W.2d 240, 243 (S.D.1989) (concluding that "rules and regulations of an administrative agency governing proceedings before it, duly adopted and within the authority of the agency are binding as if they were statutes enacted by the legislature") (citations omitted). *See also Feltrop v. South Dakota Dep't of Soc. Servs.*, 1997 SD 13, ¶ 5, 559 N.W.2d 883, 884 (recognizing that only "[a]dministrative rules have the force of law and are presumed valid") (citations omitted).

7. The dissent suggests that this writing has applied the "detriment of the amended statutes" without applying the "benefit." *See infra* n. 8. However, *it is Degens* rather than this writing that seek to apply some but not all of the policy underlying the 2005 amendments.

its course? While consents cannot legally be required of such relatives, their rights to intervene might very well cause further delays and "red tape" in the adoption process and pose to prospective adopting parents and agencies the frustrating question whether to ignore such a possibility and be unpleasantly surprised half-way through the adoption, or to invite trouble by attempting to get some sort of waiver from the close relatives of the child. Nor can we overlook the possibility that such relationship might be exploited for the benefit of the relatives, disregarding the child's best interests. A decision which invites such unwelcome possibilities would, we think, be contrary to public policy.

The trial court found that in the absence of any allegations of unfitness on the part of the adopting parents or any question relative to the mother's consent or the termination of the putative father's rights, there was no legal basis for the petition to intervene. We agree. *Petition of Benavidez*, 52 Ill.App.3d 626, 630, 367 N.E.2d 971, 974–75, 10 Ill.Dec. 362, 365–66 (1977).

[¶ 23.] Considering the facts that there was no applicable law giving Degens a legally protected interest in this adoption, there are conflicting public policies concerning this matter, and the 2005 Legislature expressed its policy on this type of intervention, this Court has no authority to retroactively impose a contrary policy and afford rights that the Legislature has specifically rejected.

[¶ 24.] GILBERTSON, Chief Justice, joins this special writing.

SABERS, Justice (dissenting).

[¶ 25.] I respectfully dissent. Almost two years ago, the majority denied Degens the right to intervene in the *abuse and neglect proceeding*. See In re D.M., 2004 SD 34, 677 N.W.2d 578. The Legislature acted quickly to preclude such a result in the future. *See* 2005 SD Sess Laws ch 140, §§ 1–3 (amending SDCL 26–7A–19 and enacting SDCL 26–7A–19.1 effective July 1, 2005); *see also* SDCL 26–8A–29.1. Now, the same majority denies Degens the right to intervene in the *adoption proceeding*.

[¶ 26.] In the prior case, this Court had the opportunity to determine whether the Degens could intervene in a subsequent adoption proceeding. *D.M.*, 2004 SD 34, ¶ 9, 677 N.W.2d at 582. It chose not to address that issue. *Id.* The dissent noted,

I would respectfully point out that refusing to consider whether the Degens can intervene in a subsequent adoption proceeding merely extends the "undue delay" the trial court was concerned about. Now [this] case can go back to the circuit court for consideration of the adoption, the Degens can attempt to intervene again, the court can deny intervention and the parties can once again bring this case before this court.

*Id.* at ¶ 21, 677 N.W.2d at 584 (Sabers, J., dissenting). Thus, had the Court either correctly decided this case in the first instance, or at least reached the adoption issue, any further delay would have been avoided.

[¶ 27.] Now, almost two years later, the Court addresses the adoption issue and again denies Degens an opportunity to adopt their grandniece. It does so by incorrectly concluding that Degens do not have the right to intervene and by permitting DSS to ignore its internal policies. The Court also overlooks the fact that the Legislature, by amending SDCL 26–7A–19, clearly intended that individuals in Degens' position have an opportunity to adopt

their relatives.[8] Because intervention standards are supposed to be flexible and construed liberally, Degens should have the opportunity to intervene and adopt D.M. if it is in her best interest.[9]

8. The concurrence accurately points out that the Legislature has now precluded parties from intervening in adoption proceedings. However, that amendment does not apply to Degens as their case was filed and determined in 2004. *See* majority opinion n. 3. Moreover, by prohibiting intervention in adoption proceedings, it would be assumed that a party would have had the right to intervene and in fact be given preference in the abuse and neglect proceeding. *See* SDCL 26–8A–29.1. Degens were unable to avail themselves of that right because the legislation was enacted after and in response to this Court's first decision. The concurrence mentions that it is too little too late for Degens to receive the benefit of the amended statutes. However, it then goes on to apply the detriment of the amended statutes and notes that the Legislature has rejected intervention in adoption proceedings. In fairness, the detriment of an amended statute should be no more retroactive than the benefit. The only reason Degens are attempting to intervene in the adoption proceeding is because this Court put them in that position by refusing to allow them to intervene in the abuse and neglect proceeding.

9. Degens have a legally protected right to intervene in the adoption proceeding just as they did in the abuse and neglect proceeding. *See D.M.*, 2004 SD 34, ¶¶ 24–27, 677 N.W.2d at 584–86 (Sabers, J., dissenting). The fact that the majority and the concurrence failed to recognize Degens' legally protected right in the prior case is no justification for not acknowledging it in this matter.